ESTATE OF SHENNEL McCRIMON McKENDALL, LAWRENCE AND JOYCE McCRIMON, ADMINISTRATORS, AND JANAY WHITE, PLAINTIFFS v. RICHARD WEBSTER, IN HIS OFFICIAL CAPACITY AS SHERIFF OF CHATHAM COUNTY, AND WESTERN SURETY, AS SURETY FOR SHERIFF WEBSTER, DEFENDANTS

No. COA07-1451

(Filed 3 March 2009)

### 1. Appeal and Error— appealability—denial of motion to dismiss—public duty doctrine

While the denial of a motion to dismiss is interlocutory, an appeal based on the public duty doctrine involves a substantial right warranting immediate appellate review.

### 2. Police Officers— liability—public duty doctrine—sheriff's promise of protection

In a wrongful death action against a sheriff that followed the shooting of a spouse who had obtained a domestic violence protective order, the non-specific nature of the sheriff's promises of protection and to enforce the protective order, with the attendant circumstances, were not sufficient to state a claim as an exception to the public duty doctrine. The trial court erred by not dismissing the portions of plaintiffs' complaint based on general promises of protection and to enforce the protective order.

### 3. Police Officers— liability—promise to seize weapons—public duty doctrine

In a wrongful death action against a sheriff that followed the shooting of a spouse who had obtained a domestic violence protective order, the sheriff's promise to procure the surrender of the husband's firearms was sufficient to state an exception to the public duty doctrine, and the ruling of the trial court denying defendants' motion to dismiss in this regard was affirmed.

Appeal by defendants from order filed 30 August 2007 by Judge Paul Gessner in Chatham County Superior Court. Heard in the Court of Appeals 30 April 2008.

*Alan McSurely for plaintiff-appellees.*

*Frazier, Hill & Fury RLLP, by William L. Hill and Torin L. Fury, for defendant-appellants.*

STEELMAN, Judge.

Issues that implicate the public duty doctrine involve a substantial right that is immediately appealable. Under the attendant circumstances, the trial court properly denied defendants' motion to dismiss the complaint as it relates to a promise to seize McKendall's weapons.

## I. Factual and Procedural Background

Plaintiffs' complaint alleges that on 15 November 2004, the District Court of Chatham County entered a domestic violence protective order that prohibited Randy McKendall (McKendall) from going near his wife, Shennel McKendall (Shennel), going to the marital home, communicating with Shennel or her family, and requiring him to turn all his firearms over to the defendant Sheriff of Chatham County[1] (CCSD). McKendall was served with this order on 15 November 2004. No firearms were collected at that time. The following day, Shennel reported to CCSD that McKendall had called her, entered their home, and fired a handgun in her daughter's bedroom. Deputies responded to Shennel's home, where they recovered a casing from a 9mm handgun. A report of this incident was filed.

Over the next six days, CCSD deputies made promises to protect Shennel on four separate occasions: 17 November, 20 November, 22 November, and 23 November 2004. The first two promises were made as deputies assisted Shennel in packing personal items to leave the marital residence. On or about 17 November, Shennel obtained a warrant from the Magistrate. On 18 November, McKendall was admitted to Lee County Hospital following an overdose of drugs. CCSD was informed of McKendall's hospitalization but took no action to prevent McKendall's release. Two days later, CCSD deputies made the second promise to protect Shennel, again as they helped her to pack belongings.

---

1. All actions were not alleged to have been taken by Sheriff Webster personally, but by Sheriff Webster or his deputies, acting as agents of the Sheriff.

On 22 November 2004, McKendall turned himself into Lee County authorities. CCSD did not comply with a request to transport McKendall back to Chatham County. The District Court of Lee County released McKendall on a $1,000 bond and further directed that he have no contact with Shennel. Shortly thereafter, Shennel reported to CCSD that McKendall had called and threatened to kill himself. That same night, CCSD deputies met with Shennel and told her that she "must find a new location that night." Lieutenants Gardner and Stuart promised to protect her, to seize McKendall's weapons, and to enforce the protective order. The following day, Lt. Stuart conferred with Corporal Brad Johnson, who obtained a warrant for the arrest of McKendall, drove to Lee County, picked up McKendall, and delivered him to the Chatham County jail. Corporal Johnson promised Shennel that CCSD "would do better and she could rely on the Sheriff for protection."

On 24 November 2004, the court set bail at $10,000; McKendall made bail within hours and was released. In the early morning hours of 29 November 2004, McKendall shot Shennel five times with a 9mm handgun in the parking lot of her workplace in Orange County. She died shortly thereafter. McKendall then shot himself in the head, resulting in his own death.

On 28 November 2006, plaintiffs filed a complaint seeking damages and other relief in a wrongful death action against defendant Webster and an unnamed surety. On 24 April 2007, the trial court allowed the plaintiffs to substitute the proper name of the surety company in an amended complaint. The amended complaint, naming Western Surety as a defendant and adding a paragraph alleging waiver of sovereign immunity, was served on defendants on 29 May 2007. Defendants moved to dismiss the amended complaint, in part upon the public duty doctrine. The court denied the motion.

Defendants appeal.

## II. Standard of Review

[1] Ordinarily, the denial of a motion to dismiss is interlocutory, and there is no immediate right of appeal. *Cockerham-Ellerbee v. Town of Jonesville*, 176 N.C. App. 372, 374, 626 S.E.2d 685, 687 (2006). However, an appeal based on the public duty doctrine "involves a substantial right warranting immediate appellate review." *Id.* (citing *Smith v. Jackson Cty. Bd. of Educ.*, 168 N.C. App. 452, 458, 608 S.E.2d 399, 405 (2005)). The scope of our review in this case is thus limited to issues that implicate the public duty doctrine. *Id.*

When ruling upon a 12(b)(6) motion to dismiss, a trial court must determine as a matter of law whether the allegations in the complaint, taken as true, state a claim for relief under some legal theory. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003). On appeal of a 12(b)(6) motion to dismiss for failure to state a claim, our Court "conduct[s] a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Id.*

*Page v. Lexington Ins. Co.*, 177 N.C. App. 246, 248, 628 S.E.2d 427, 429 (2006).

### III. Analysis

### A. Exception to the Public Duty Doctrine

[2] In their first argument, defendants contend that the complaint was grounded in an alleged failure to arrest McKendall and did not plead facts sufficient to establish any exception to the public duty doctrine. We agree in part and disagree in part.

Generally, the public duty doctrine bars negligence claims by individuals against a governmental entity or its agents acting in a law enforcement capacity for failure to provide protection to that person from the criminal acts of a third party. *Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991), *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1992). "[S]ince plaintiff's cause of action is based on defendant's failure to protect her from the acts of a third party rather than any direct misconduct on their part, the public duty doctrine is applicable." *Cockerham-Ellerbee*, 176 N.C. App. at 375, 626 S.E.2d at 688 (citation omitted). An exception to the public duty doctrine exists where the governmental entity, through its law enforcement officers "promise[s] protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered." *Braswell*, 330 N.C. at 371, 410 S.E.2d at 901 (citations omitted).

Plaintiffs' complaint alleges four separate and distinct promises, as follows:[2]

18. On 17 November 2004 Shennel and two deputies of Sheriff Webster went to her home to pack some personal items so she

---

2. Paragraphs 26 and 28 are both related to the third promise, made on 22 November 2004. The final promise, paragraph 31, was made on 23 November 2004.

could stay elsewhere. For the first time agents of the Sheriff treated her with respect. They promised Shennel they would do everything they could to find Mr. McKendall and protect her.

. . .

22. On 20 November 2004 agents of the Sheriff again promised Shennel they would protect her from Mr. McKendall when they helped her pack more belongings from her home to stay elsewhere.

. . .

26. [On 22 November 2004, t]wo agents of Sheriff Webster, Lt. Gardner and Lt. Stuart, met with Shennel and told her she must find a new location that night. Again, for the third time, they promised her they would protect her, seize Mr. McKendall's weapons from him, and enforce the protective order that Mr. McKendall had violated.

. . .

28. Again, these agents of Sheriff Webster promised Shennel the Sheriff would protect her and that they really meant it this time. Shennel believed them.

. . .

31. On information and belief, Cpl. Johnson, embarrassed for his Department, promised Shennel the Sheriff would do better and she could rely on the Sheriff for protection.

These alleged promises fall into three categories: (1) general promise to protect (paragraphs 18, 22, 26, 28, and 31); (2) promise to enforce the protective order (paragraph 26); and (3) promise to seize McKendall's weapons (paragraph 26). Whether these promises created a special duty depends not just on the statements made by law enforcement, but also upon all of the attendant circumstances. *Cockerham-Ellerbee*, 176 N.C. App. at 377-78, 626 S.E.2d at 689.

### 1. Promise to Protect Shennel and Enforce Protective Order

*Braswell* makes it clear that general promises of protection made by law enforcement officers are not sufficient to constitute an exception to the public duty doctrine. Plaintiff in *Braswell* presented evidence that "Sheriff Tyson stated that Billy would not harm Lillie and that his men would be keeping an eye on her, and promised only that

Lillie would get to and from work safely." *Braswell*,·330 N.C. at 371, 410 S.E.2d at 902. The Supreme Court held that, except for the promise to get Lillie to and from work, the promises were no more than "general words of comfort and assurance, commonly offered by law enforcement officers in situations involving domestic problems." *Id.* at 371-72, 410 S.E.2d at 902. In the instant case, the general promises of protection alleged in paragraphs 18, 22, 26, 28, and 31 are far less specific than those made either in *Braswell* or in *Cockerham-Ellerbee*, where defendants promised "to arrest Ellerbee 'right then' " and that the victim and her daughter "would no longer have to worry about their safety." *Cockerham-Ellerbee*, 176 N.C. App. at 378, 626 S.E.2d at 689.

We also note that there are attendant circumstances alleged in the complaint. Shennel moved to another location from the marital residence. The Sheriff's Department obtained a warrant for McKendall's arrest, picked him up in Lee County, and placed him in the Chatham County jail. McKendall remained there until the District Court set bail. He was released upon posting bail. The setting of conditions of pretrial release is a judicial function, *see* N.C. Gen. Stat. § 15A-534 (2008), and is not a function of the office of Sheriff. Further, Shennel was killed in Orange County, not Chatham County.

Based upon the non-specific nature of the promises made by the Sheriff to protect Shennel and to enforce the protective order, and the attendant circumstances, all as alleged in plaintiffs' complaint, we hold that these allegations are insufficient to state a claim as an exception to the public duty doctrine. *Id.* The trial court erred in not dismissing the portions of plaintiffs' complaint based upon general promises of protection and to enforce the protective order.

## 2. Promise to Seize Weapons

[3] In paragraph 26 of the complaint, plaintiffs allege that the Sheriff promised to seize McKendall's weapons. Upon review, we are required to treat this allegation as true. *Page v. Lexington Ins.*, 177 N.C. App. at 248, 628 S.E.2d at 429. This promise is more specific than the general promises of protection and enforcement of the protective order and is more analogous to the promises in *Cockerham-Ellerbee* than those in *Braswell*.

The complaint contains allegations of attendant circumstances relevant to this claim. On 15 November 2004, the District Court of Chatham County ordered that McKendall surrender all firearms to the

Sheriff. The order was served on McKendall on 15 November 2004. On 16 November 2004, McKendall entered the marital home and discharged a 9mm handgun twice. Deputies confirmed that this occurred and recovered one of the shell casings. The complaint alleged that the Sheriff took no action to procure the surrender of McKendall's firearms. On 29 November 2004, McKendall shot and killed Shennel with a 9mm handgun in Orange County.

Based upon the specific nature of this promise made by the Sheriff and the attendant circumstances, all as alleged in plaintiffs' complaint, we hold that this allegation is sufficient to state a claim that is an exception to the public duty doctrine. The ruling of the trial court denying defendants' motion to dismiss is affirmed as to the specific promise to seize McKendall's weapons.

### B. The 23 November 2004 Arrest

In their final two arguments, defendants assert that, should this Court find that plaintiffs have pled an exception to the public duty doctrine, any such duty was discharged by the 23 November 2004 arrest.

We have previously held that plaintiffs have properly pled exceptions to the public duty doctrine based upon the Sheriff's promises to seize McKendall's weapons. This claim was not implicated by any duty to arrest, and we need not address it.

### IV. Conclusion

Because of our previous rulings, we need not address plaintiffs' remaining argument. As to the general promises to protect Shennel and to enforce the protective order, the denial of defendants' motion to dismiss is reversed. As to defendants' specific promise to seize McKendall's weapons, the order of the trial court is affirmed.

We further reiterate that at this stage of the proceedings, we are required to accept plaintiffs' allegations as true, and have not reviewed any issues other than those arising under the public duty doctrine.

AFFIRMED IN PART.

REVERSED IN PART.

Judges HUNTER, ROBERT C. and STEPHENS concur.